UNITED STATES OF AMERICA,     )
    )
    Plaintiff,     )
    )
    v.     )     No. 4:14CR152 RWS/NCC
    )
DOUG SLOAN, and     )
CHARLES WOLFE, a/k/a "Chuck Wolfe,"     )
    )
    Defendants.     )

## ORDER, MEMORANDUM, AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON MOTIONS TO DISMISS AND FOR BILL OF PARTICULARS

The above matter was referred to the undersigned United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b).

## Introduction

On May 21, 2014, defendants Doug Sloan and Charles Wolfe were charged in a four-

count Indictment with ten other defendants.[1] Both Sloan and Wolfe are charged with multiple

conspiracies that allege the illegal manufacture, sale and distribution of analogue or synthetic

substances and other related violations. This case is one of four related indictments (the

"Analogue cases"), in which a total of twenty-nine (29) defendants are charged across the four

cases. Defendant Wolfe is also charged with five co-defendants in *United States v. Mark

Palmer, et al.*, Case No. 4:14CR175 AGF/DDN (E.D. Mo. July 19, 2016). The allegations in the

*Palmer* case are similar to the allegations in the case at bar.

---

[1] The Indictment also contains a forfeiture allegation based on the alleged criminal nature of the other counts. Defendants Greg Sloan, Igor Holdaiy, Brett Beeman, Sherri Beeman, Roger Galvin, John Galvin, Robert Jaynes, Jr. and Kirk Parsons have entered guilty pleas. The Indictment has been dismissed as to Defendant David Neal. Defendants Elizabeth Pogue and Marcia Gronek have waived their right to file pretrial motions.

The Analogue cases are referred to three Magistrate Judges for pretrial matters, including the undersigned, and assigned to three District Judges of this Court. The Court imposed measures to consolidate and manage aspects of the pretrial phase of the Analogue cases in light of the number of indigent defendants, the voluminous discovery and the scientific and legal issues of first impression in this District presented in the four indictments. For judicial economy, the Court ordered defendants in the four cases to file jointly their pretrial motions on common legal and substantive issues where practicable. The Court's pretrial scheduling orders for the Analogue cases directed defendants to file motions seeking to dismiss the indictments prior to filing motions to suppress evidence, statements or some other pretrial evidentiary motion. (Docs. 144, 232, 269). On October 8, 2015, defendants Sloan and Wolfe filed jointly a Motion To Dismiss Count I, a Motion for a Bill of Particulars, and, in the alternative, a Motion to Strike.[2] (Doc. 370). Defendants also filed separately, on October 8, 2015, Defendants' Joint Motion To Dismiss Indictment As Unconstitutionally Void For Vagueness, along with Defendants' Joint Motion To Dismiss Count I Of The Indictment With Memorandum In Support. (Docs. 373, 374). The government has responded. (Doc. 401). Defendants have replied to the government's omnibus response. (Docs. 421, 422, 423 and 424). On May 27, 2016, in the *Palmer* case, U.S. Magistrate Judge David D. Noce held a suppression hearing on defendants' motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), regarding search warrants obtained in the investigation of that case (and this case as well). During the hearing before Judge Noce,

---

2 The full title of defendants' initial pretrial motion is Motion To Dismiss Count I Of The Indictment On Grounds That The Indictment Fails To State An Offense And That 21 U.S.C. § 813 and 21 U.S.C. 802(32)(A) Are Unconstitutionally Vague As Applied To Defendants Or, In The Alternative, To Strike Certain Substances From The Indictment. Defendants' Motions were originally filed with co-defendants Sherri Beeman and David Neal. The Court has granted Sherri Beeman's motion to withdraw her participation in these Motions and Responses. (Doc. 449). On February 29, 2016, the Court dismissed the case against David Neal on the government's motion. (Doc. 494).

defendants requested that they be allowed to file additional briefs in both the *Palmer* case and this case to supplement their joint motion to dismiss based on recent Supreme Court rulings in *United States v. McFadden*, 135 S. Ct. 2298, 2302 (2015), and *Johnson v. United States*, 135 S. Ct. 2551 (2015). Judge Noce granted their oral motion. On June 16 and 17, 2016, defendant Wolfe filed Defendant's Supplemental Brief To Dismiss Indictment As Unconstitutionally Void For Vagueness and Defendant's Supplemental Brief To Dismiss Count I Of The Indictment. (Docs. 583, 584). Defendant Wolfe cited to the recent Supreme Court opinion in *Welch v. United States*, 136 S. Ct. 1257 (2016), and other case law. (Docs. 583 and 584). The government has responded. (Doc. 585). On September 14, 2016, defendant Sloan filed a Motion to Adopt Certain Specific Memoranda of Co-defendant Charles Wolfe Filed in Companion case. (Doc. 618).

This Court has reviewed all of the pretrial motions and responses (collectively, "Motions and Responses") in their entirety and reviewed the transcript of the evidentiary hearing before Judge Noce. Defendants argue that Count I of the Indictment should be dismissed because:

(1) Count I fails to state an offense because the rules of statutory construction prohibit cannabimimetic agents to be defined as controlled substance analogues by the underlying charging statute;

(2) Count I is unconstitutionally vague; and

(3) Count I fails to allege that defendants knew the characteristics of the substances alleged were controlled substance analogues. Defendants ask, in the alternative, that the Court strike any substances in Count I that are improperly charged as controlled substance analogues to be referred to as cannabimimetic agents.

In addition, defendants move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).  (Doc. 372).

## Standard of Review

To be legally sufficient on its face, the indictment must contain all the essential elements of the offense(s) charged, it must fairly inform the defendant of the charge(s) against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or acquittal as a bar to a subsequent prosecution.  U.S. Const. Amends. V and VI; Fed. R. Crim. P. 7(c)(1); *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Hance*, 501 F.3d 900, 906 (8th Cir. 2007); *United States v. Just*, 74 F.3d 902, 903-04 (8th Cir. 1996); *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993).  An indictment is insufficient only if a substantive, essential element is omitted.  *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008).  Moreover, "[a]n indictment should not be read in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'"  *United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998).  However, "[i]f an essential element of the charge has been omitted from the indictment, the omission is not cured by the bare citation of the charging statute."  *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1998).  With these principals in mind, the Court has carefully considered the competing interpretations of the law by counsel and concludes, consistent with the discussion below, that defendants' Motions to Dismiss the Indictment should be denied.

## Motion to Dismiss Count I (Docs. 370, 373, 374, 583, 584)

**A.    Sufficiency of the Indictment As To The Four Substances Also Known As AKB48 and APINACA; XLR-11 and 5-flouro-UR-144; A796260; and MAM2201.**

Defendants argue that Count I, as crafted by the government, does not allege all the essential elements of the offense charged because the rules of statutory construction do not allow for certain substances (i.e., cannabimimetic agents), exclusively defined under the Synthetic Drug Abuse Prevention Act, 21 U.S.C. § 812(c)(d)(2)(A), to likewise be defined generally as controlled substance analogues subject to the penalties of the Analogue Act.  21 U.S.C. § 813. Defendants also assert that Count I should be dismissed because it does not plead the required intent element with respect to defendants' conduct.  They also claim the Analogue Act is unconstitutionally vague and, as a result, Count I fails to state an offense.

Count I alleges in part, "the defendants herein, did knowingly and unlawfully combine, conspire, agree, and confederate together with each other and other persons, both known and unknown to the Grand Jury, to distribute and to possess with the intent to distribute Schedule I controlled substances and Schedule I controlled substance analogues intended for human consumption, in violation of Title 21, Untied States Code, Sections 841(a)(1) and 813."  (Doc. 1).  Further, Count I alleges that the conspiracy began sometime in 2011 and continued to on or about the date of the Indictment.  The twelve defendants are identified as co-conspirators with others known and unknown; and specific facts are alleged that are described in the "Manner and Means of the Conspiracy."  (Id.)

The "Manner and Means" section of the Indictment alleges, in relevant part,

B.     MANNER AND MEANS OF THE CONSPIRACY

1.     It was part of the drug-trafficking conspiracy that defendants GREG SLOAN and DOUG SLOAN operated NEB Distributing, LLC, and Silver Rocket Distributing, LLC, for the purpose of distributing synthetic drugs.

* * *

5.     It was further part of the drug-trafficking conspiracy that the synthetic drugs sold carried names including "Mad Hatter," "Primo," "Optima," Cloud 9,"  "Cloud 9 Deew," "Crazy Eyes," and were packaged in foil packets or containers, in one or three gram quantities.

6.     It was further part of the drug-trafficking conspiracy that the packaged synthetic drugs would be intended for human consumption although they carried a "not for human consumption" label in an attempt to avoid drug-trafficking laws.

7.     The synthetic products would be consumed, primarily by smoking or snorting the substance in order to obtain a "high."

8.     It was further part of the drug-trafficking conspiracy that the defendants would make sure the chemicals utilized to manufacture the synthetic drugs were changed in an attempt to avoid federal drug scheduling regulations while still producing products which had the same physiological effect creating a "high" that mimics the effects of a controlled substance.

* * *

11.     It was further part of the drug-trafficking conspiracy that defendant CHARLES WOLFE a/k/a "Chuck Wolfe," d/b/a Psychedelic Blur, LLC, sold synthetic drugs obtained though NEB Distributing, LLC.

(Id. at 3-5).

Count I of the Indictment also identified the alleged "controlled substance analogues" involved in the conspiracy.  In paragraph 4(a)-(m), they are identified as:

(Id. at 2-3).

a)     1-pentyl-3-(1-naphthoyl)indole,  also known as "JWH-018;"

b)     1-pentyl-3-(4-methyl-1-naphythoyl)indole,  also known as "JWH-122;"

c)    1-pentyl-3-(2-methoxyphenylaceityl)indole, also known as "JWH-250;"

d)    1-(5-fluoropentyl)-3-(1-naphthoyl)indole, also known as "AM-2201;"

e)    2-Pyrrolidinovalerophenone, also known as "a-PVP;"

f)    N-(l-adamantyl)-1-pentyl-lH-indazole-3-carboxamide, also known as
      "AKB48" and APINACA;"

g)    1-pentyl-3-(1-naphthyl) indole, also known as "XLR-11" and "5-
      flouro- UR-144;"

h)    2-(methylamina)-1-phenylpentan-1-one, also known as "Pentedrone;"

i)    4-methyl-N-ethylcathinone, also known as "4-Mec;"

j)    5-methoxy-N,N-diallytryptamine, also known as "5-Meo-dalt;"

k)    1-(morpholinoethyl)-3-(2,2,3,3-tetramethlcyclopropoyl)indole, also known
      as "A796260;"

l)    methylenedio xypyrovalerone, also known as "MDPV;" and

m)    1-(5-fluropentyl)-4-methyl-3-(1-naphthoyl)indole, also known as
      "MAM2201."

Further, the essential elements of a Section 846 conspiracy are that each defendant (1) knowingly or intentionally (2) agreed with another (3) to "commit any offense defined in this subchapter" (subchapter I, chapter 13, Title 21, United States Code). *United States v. Moore*, 639 F.3d 443, 446-47 (8th Cir. 2011); *United States v. McMillin*, 2015 WL778866, at *10 (W.D. Mo. Feb. 24, 2015).

Defendants say Count I is fatally flawed because some of the substances alleged in the conspiracy are synthetic cannabinoids of the cannabis/marijuana family, which are not defined as controlled-substance analogues under the general "confusing," "substantially similar" language of the Analogue Act. See U.S.C. § 802(32)(A) (defining the term controlled substance

analogue).  (Doc. 370 at p. 5).  The substances at issue in Count I are AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201.  Instead, they say these substances are "cannabimimetic agents" or analogues of cannabimimetic agents defined by a different and more specific provision of federal law, enacted more recently.  *See* 21 U.S.C § 812(c)(d)(2)(A) (the Synthetic Drug Abuse Prevention Act).  They further argue that because cannabimimetic agents are statutorily distinct and are scheduled differently by the Drug Enforcement Administration (DEA), Count I fails to state an offense, which cannot be cured because an "irreconcilable conflict exists between the statutory definition[s]."  (Doc. 370 at 13).

The government responds that the defendants' premise is incorrect.  The provisions of 21 U.S.C § 802(32)(A) and § 812(c)(d)(2)(A) do not operate in conflict with each other; rather, the latter continues the statutory scheme of the former.  In other words, 21 U.S.C. § 802(32)(A) is a framework of proof and 21 U.S.C. § 812 (c)(d)(2)(A) is a guide for how to treat certain substances.  The government also argues that the Analogue Act is not unconstitutionally vague. (Doc. 401 at p. 9).  The government further contends that federal law allows the United States Attorney General to delegate her authority to the Drug Enforcement Administration (DEA) to add, remove, and move certain controlled substance analogues from a schedule, and from one schedule to another in recognition of the ever-changing landscape of the synthetic-drug market. 21 U.S.C. §§ 811(h) and 871.  Moreover, when DEA issued a final order on March 1, 2011 as an emergency measure, the Agency listed JWH-018 on Schedule I, among other substances, defining this cannabinoid as a controlled substance.  *See Newbold v. United States*, 2009 WL 2243642, at *11 (M.D. N.C. July 27, 2009)(holding that the indictment was not defective on the grounds that it did not identify a particular Schedule I substance to be associated with the controlled substance analogues).

The Analogue Act was added to the Controlled Substances Act of 1986 and it provides that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated for the purpose of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813. The Analogue Act defines the term controlled substance analogue as follows:

> Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance –
>
> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). Thus, in order to establish a violation of the Analogue Act, the government must prove the following essential elements:

> (1) substantial chemical similarity between the alleged analogue and a controlled substance; (2) actual, intended, or claimed physiological similarity (in other words, that the alleged analogue has effects similar to those of a controlled substance or that the defendant intended or represented that the substance would have such effects); and (3) intent that the substance be consumed by humans.

*United States v. Carlson*, 810 F.3d 544 (8th Cir. 2016), *petition for cert. filed*, 84 U.S.L.W. 3529 (U.S. Mar. 9, 2016) (No. 15-1136). Simply put, the government must prove both chemical similarity and similarity as to pharmacological effect on the human body when consumed.

Also relevant here is the Synthetic Drug Act (SDAPA), enacted on July 9, 2012, and

which provides, in part, that JWH-018 is permanently scheduled as a Schedule I controlled

substance. The Synthetic Drug Act defines the term cannabimimetic agents as follows:

> any substance that is a cannabinoid receptor type 1 (CBI receptor) agonist as
> demonstrated by binding studies and functional assays within any of the following
> structural classes:
>
> (i)     2-(3-hydroxycyclohexyl)phenol with substitution at the 5-position of the phenolic
>          ring by alkyl or alkenyl, whether or not substituted on the cyclohexyl ring to any
>          extent.
>
> (ii)    3-(1-naphthoyl)indole or 3- (1-naphthylmethane)indole by substitution at the
>          nitrogen atom of the indole ring, whether or not further substituted on the indole
>          ring to any extent, whether or not substituted on the naphthoyl or naphthyl ring
>          to any extent.
>
> (iii)   3-(1-naphthoyl)pyrrole by substitution at the nitrogen atom of the pyrrole ring,
>          whether or not further substituted in the pyrrole ring to any extent, whether or
>          not substituted on the naphthoyl ring to any extent.
>
> (iv)    1-(1-naphthylmethylene)indene by substitution of the 3-position of the indene
>          ring, whether or not further substituted in the indene ring to any extent, whether or
>          not substituted on the naphthyl ring to any extent.
>
> (v)     3-phenylacetylindole or 3-benzoylindole by substitution at the nitrogen atom of
>          the indole ring, whether or not further substituted in the indole ring to any extent,
>          whether or not substituted on the phenyl ring to any extent."

Title 21, United States Code, Section 812(c)(d)(2)(A).

Defendants take the position that there is a statutory conflict at work in the two definitions and,

therefore, the subsequent statute should govern. In other words, defendants appear to argue that

analogues of cannabimimetic agents cannot also be analogues of controlled substances for the

purposes of the Analogue Act. The government counters that the purpose of the Synthetic Drug

Act was to schedule an entire class of cannabimimetic agents so that the DEA no longer needed

to take regulatory action to schedule these substances. 21 U.S.C. § 812 (c)(d)(1). This Court

must determine whether these statutory definitions are mutually exclusive or complementary.

On these questions, the Supreme Court has reasoned:

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), and "fit, if possible, all parts into an harmonious whole," *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959). Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand. *See United States v. Estate of Romani*, 523 U.S. 517, 530–531, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998); *United States v. Fausto*, 484 U.S. 439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). In addition, we must be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency. *Cf. MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218, 231, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994).

*FDA v. Brown & Williamson Tobacco Corp*, 529 U.S. 120, 133 (2000).

With these principles in mind, the Court finds the government's argument to be persuasive and recognizes that courts are "bound to consider the statutory text as a coherent whole," when asked to consider potentially rival provisions of law in isolation. *See, e.g., Reece v. Bank of New York Mellon*, 760 F.3d 771, 775 (8th Cir. 2014). Effect should be given to both acts on the same subject matter where possible. *Posadas v. Nat'l City Bank of N.Y*, 296 U.S. 497, 503 (1936)("The cardinal rule is that repeals by implication are not favored."). *See also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) ("While a later enacted statute ... can sometimes operate to amend or even repeal an earlier statutory provision ..., repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.") (internal quotation marks and citations omitted).

Generally, courts recognize that a true irreconcilable conflict requires a deep and clear divide and Congressional intent to substitute one for the other. "It is not enough to show that the

two statutes produce differing results when applied to the same factual situation...." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). Instead, the "intent to repeal must be manifest in the 'positive repugnancy between the provisions.'" *United States v. Batchelder*, 442 U.S. 114, 122 (1979) (quotations omitted). Thus, when read separately and in context with each other, the undersigned joins with another judge of this Court in finding that the purposes of 21 U.S.C. § 812 and § 802(32)(A) differ without contradicting each other. *Palmer*, Case No. 4:14 CR 00175 AGF-DDN, at p. 17 ("Merely because the alleged analogues do not share a specific 'structural class' for one purpose does not mean that they do not have a 'substantially similar' chemical structure of a controlled substance.").

Here, defendants have no authority to support their claim that Congress intended the Synthetic Drug Act's definitions as a repeal of the statutory definition enacted by the Analogue Act on the grounds that AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201 may share a specific "structural class" as a cannabimimetic agent. And the Eighth Circuit has recently discussed certain substances in a manner consistent with the government's position. *United States v. Ways*, No. 15-1716, slip op., at 3 n.3 (8th Cir. August 11, 2016) ("MDPV and Methylone are hallucinogenic substances, and JWH-122, JWH-250, JWH-018, JWH-203 and AM2201 are cannabimimetic agents. All are Schedule I controlled substances."). It is clear that cannabimimetic agents can be controlled substances. It follows that cannabimimetic agents can *also* be controlled substance analogues, so long as the statutory proof scheme is met. 21 U.S.C. § 802(32)(A).

In *Ways*, the defendant argued on appeal that the district court denied his motion to suppress evidence in error because search warrants served at his four head shops in Iowa and Nebraska lacked probable cause, in part, because the controlled substances he was charged with

distributing were not defined as Schedule I drugs under the Synthetic Drug Act until a date after the warrants were issued. *Id.* at p. 6. Like defendants in this case, the defendant in *Ways* was charged in a conspiracy to distribute controlled substances. The Court noted, "[b]efore the effective date of SDAPA, these substances were not classified as Schedule I drugs, and their distribution would have been unlawful only if there were controlled substance analogues intended for human consumption [under the Analogue Act]." *Id.* (citation and quotation omitted). The reasoning in *Ways* does not support defendants' position that the Synthetic Drug Act's classification of certain cannabimimetic agents is a repeal of the Analogue Act's definition of controlled substance analogue. Cannabimimetic agents that were not scheduled on the dates relevant to Count I may be subject to the penalties of the Analogue Act as charged, so long as defendants knew that they were controlled substance analogues intended for human consumption. Count I sufficiently alleges those facts. Further, the failure of Count I to allege that AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201 are controlled substance analogues of a specific controlled substance is not fatal. "The type of drug charged in a §841 crime is immaterial, rather, the critical fact is that the substance is controlled, not that it is one variety or another." *United States v. Leonard*, 777 F. Supp. 2d 1025, 1030 (W.D. Va. 2011)(quoting *United States v. Townsend*, 924 F.2d 1385, 1402 (7th Cir. 1991)).

The Eighth Circuit has rejected repeated challenges to the Analogue Act that are instructive here. "Under the [Analogue Act], a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance [in schedule I], and either has a substantially similar effect on the user's central nervous system, or a relevant someone represents that it has or intends it to have such an effect." *United States v. McKinney*, 79 F.3d 105, 107-108 (8th Cir. 1996), *vacated on unrelated grounds*, 520 U.S. 1226 (1997). In

*McKinney*, the Eighth Circuit acknowledged that "manufacturers of illegal drugs have become adept at tinkering with the molecular structure of controlled substances while retaining the effects that those substances produce, the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances. *McKinney*, 79 F.3d at 107. Further, the Eighth Circuit has rejected the notion that the government must identify every analogue prior to taking up a prosecution or must warn manufactures "prior to enforcement of the statute." *United States v. Washam*, 312 F.3d 926, 932 (8th Cir. 2002). *See also*, *United States v. Franklin*, 2014 WL 1953077 (W.D. Mo. May 15, 2014); quoting *United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013) ("The CSAEA does not, however, require the DEA to classify a substance as a controlled substance analogue before the substance falls under its purview.")). Moreover, "[w]hen considering whether the Analogue Act is impermissibly vague, the Court looks to the legal definition of a statutory term [substantially similar], not the scientific definition." *United States v. Franklin*, 2014 WL 1953077, at *7-8 (W.D. Mo. May 15, 2014)(quoting *United States v. Brown*, 279 F. Supp. 2d 1238, 1240 (S.D. Ala. 2003)("Since the Analogue Act does not indicate that the term 'substantially similar' is to be defined as it is used scientifically, the court will interpret those words as they are used in everyday language."). Undefined terms in statutes should be given their ordinary meanings. *Jones v. United States*, 529 U.S. 848, 855 (2000). The Analogue Act provides substantial guidance as to what conduct will result in a violation. And the purposes of 21 U.S.C. §§ 812(c)(d)(2)(A) and 802(32)(A) differ from one another without contradiction. Thus, dismissal of Count I is not warranted on this basis.

Defendants further claim that the Supreme Court's decision in *McFadden v. United States*, 135 S. Ct. 2302 (2015), requires that Count I allege, as an essential element, that they

knew they were dealing in controlled substance analogues. *McFadden* is not a conspiracy case. Even so, defendants are correct in pointing out here that the government bears the burden of proving that a defendant knew that a substance in question was a controlled substance analogue—regardless of the particular identity; or that the substance's physical properties were substantially similar to a scheduled controlled substance—without consideration of his or her knowledge of its legal status. *Id*. at 2302. *See also United States v. Bamberg*, 478 F.3d 934, 939-40 (8th Cir. 2007)(adopting the rational first established by a sister circuit in *United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005)). Given the aforementioned facts, Count I of the Indictment alleges the requisite knowledge on the part of defendants. *Sullivan*, 714 F.3d at 1107. The Court finds that, when "read in its entirety and construed in accord with common sense and practicality," Count I supports a sufficient factual basis that a grand jury made the finding of a controlled substance analogue as to AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201. *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995). *See, also, United States v. Qattoum*, No. 15-2176, slip op. at 4-5 (8th Cir. June 23, 2016)(relying on *McFadden* in noting that the government need only show "a general criminal intent, *i.e.*, awareness that the [analogue] substance possessed was a controlled substance of some kind." *United States v. Ramos*, 814 F.3d 910, 915 (8th Cir. 2016)(quoting *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir. 1986)).

In addition, when a defendant challenges an indictment on a motion to dismiss, the court must accept the government's allegations in the indictment as true. *United States v. Birbragher*, 603 F.3d 478, 481 (8th Cir. 2010). *See also United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n.3 (8th Cir. 1991)(providing that, in considering a motion to dismiss an indictment, "we accept the government's allegations as true, without reference to allegations outside the

indicting document."). Whether AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201 are actually controlled substance analogues is a question of fact that must be assumed as true for the purposes of a motion to dismiss. *Id.* As the government points out, this is a factual inquiry for the jury to decide at trial on the merits and not by the Court by this method or at this juncture. (Doc. 401, at p. 19). *See United States v. Williams, et al.*, 2016 WL 4006826, at *3 (W.D. Mo. June 29, 2016)(denying motion to dismiss analogue conspiracy indictment and motion for bill of particulars because indictment was sufficient on its face; questions of fact are for the jury and quoting *United States v. Johnson*, 2014 WL 7330936, at *3 (D. Nev. Dec. 19, 2014)).

Count I includes specific factual descriptions of the alleged illegal activity, which combined provide sufficient notice of the charge and meets all the elements of a §§ 846 and 813 conspiracy. Besides the knowing entry into the conspiracy, Count I alleges that defendants (1) knew the alleged synthetic chemicals were (2) intended for human consumption (3) had chemical structure(s) substantially similar to that of a controlled substance, and (4) either (a) have substantially similar effect on the user's central nervous system as would a controlled substance, i.e., a "high" or (b) were intended by defendant(s) to have such an effect. Thus, Count I includes the necessary threshold of knowledge alleged to meet the requirement discussed in *McFadden, supra*.

Having made this determination, the court finds that Count I is a plain, concise and definite statement of the essential facts constituting the offense charged, alleges all the essential elements of the offense charged and complies in all respects with Rule 7(c), Federal Rule of Criminal Procedure. Count I of the Indictment closely tracks the language of the underlying

statutes and, therefore, is legally sufficient on its face. *United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009); *see also United States v. Oakie*, 12 F.3d 1436, 1440 (8th Cir. 1993).

To the extent that defendants also assert a general challenge to the sufficiency of the government's evidence by way of their motion to dismiss, such an argument is not persuasive. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *See*, *e.g.*, *United States v. DeLaurentis*, 230 F.3d 659, 660 (3rd Cir. 2000)(alteration added) (holding that Fed. R. Crim. P. 12(b)(2) authorizes dismissal of an indictment on the grounds that its allegations are not sufficient to charge an offense but not on the grounds that the evidence is not sufficient to prove the charges). "Where an indictment quotes the language of the statute and includes the date, place and nature of the illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Doe*, 572 F.3d 1162, 1173-1174 (10th Cir. 2009) (quoting *United States v. Redcorn*, 328 F.3d 727, 733 (10th Cir. 2008)). In quoting the Third Circuit in *DeLaurentis*, the Eighth Circuit opined,

> In civil cases, of course, the summary judgment procedures contemplated by Federal Rule of Civil Procedure 56 may be utilized to test, pretrial, the sufficiency of the evidence to establish triable issues of fact; but there is no corollary in criminal cases. The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29.… [W]e simply cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be.

*United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001)(quoting *DeLaurentis*, 230 F.3d at 661)(alterations in original). In this case, the eighteen-page indictment speaks for itself; Count I tracks the statutory language, identifies the federal law underlying the charge, alleges each of the essential elements, states the manner and means, and specifies the approximate time period of the

conspiracy. Thus, Count I of the Indictment, reasonably read, sufficiently alleges a violation of 21 U.S.C. §§ 846 and 813.

If the government fails to prove at trial that defendants conspired as alleged, then defendants may be entitled to an acquittal; however, it is not grounds to dismiss Count I nor is it a basis for the Court to strike substances at this stage in the proceedings.

### B.      Constitutionality of the Analogue Act

Defendants also argue that Count I is unconstitutionally void for vagueness because the Analogue Act is unconstitutionally vague.[3] (Docs. 370, 583, 584). Vague statutes are void. *Washam*, 312 F.3d at 929. "Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988). Defendants' argument is two-fold. They challenge the substantially similar language in the definition of "controlled substance analogues" in the Analogue Act as vague, ambiguous or arbitrary. Defendants also assert a legal challenge to the Analogue Act's general failure to provide adequate notice under the Fifth Amendment. In support, they claim that the Analogue Act lends itself to arbitrary enforcement contrary to recent Supreme Court decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (describing the standard for a void for vagueness analysis and ruling the residual clause of the Armed Career Criminal Act (ACCA) is void for vagueness), and *Welch v. United States*, 136 S. Ct. 1257 (2016). (Doc. 373, at p. 7.)

The courts have applied a two-part test to determine whether a statute is unconstitutionally vague: 1) "the statute must provide adequate notice of the proscribed conduct"

---

3 Defendants also argue that this inherent vagueness creates confusion in the Federal Register's placement of certain drug types (i.e., cannabimimetic agents) designated by DEA into one of three categories: stimulants, depressants, and hallucinogens. Federal Register, Vol. 81, No 55, Pg. 15190 (March 22, 2016).

and 2) "the statute must not lend itself to arbitrary enforcement." *Washam*, 312 F.3d at 929-30 (holding that the Analogue Act is not void for vagueness and stating that a "penal statute is void if it does not sufficiently define a criminal offense so that ordinary people can understand what conduct is prohibited. This inquiry looks as what person of 'common intelligence' would 'reasonably' understand the statute to proscribe, not what the particular defendant understood the statute to mean."). *United States v. Berger*, 553 F.3d 1107, 110 (8th Cir. 2009) (holding the Analogue Act is not unconstitutionally vague). *Bamberg*, 478 F.3d 934, 937-38 (8th Cir. 2007). *United States v. McKinney*, 79 F.3d 105 (8th Cir. 1996)(ruling notice requirement met and finding Analogue Act is not unconstitutionally vague), *judgment vacated on other ground*, *McKinney v. United States*, 520 U.S. 1226 (1997). In *McKinney*, the Eighth Circuit reasoned that although there may be "doubts as to the applicability of the language in marginal fact situations [that] may be conceived, we think that the statute gave defendant adequate warning that his conduct was a criminal offense" and that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." 79 F.3d at 108. At the same time, disagreements among scientists on the subject of substantial similarity have not led the Eighth Circuit to decide that the Analogue Act is impermissibility vague. Instead, the standard is clearly drawn as to the reasonable lay person who can compare diagrams, and analyze chemical charts to make an intelligent decision about the similarity of substances. *Washam*, 312 F.3d at 932.

Like this case, the defendant in *Washam* challenged the Analogue Act's definition of controlled substance analogue. With due consideration given to *McKinney*, *Washam* and *McFadden*, the undersigned is not convinced that defendants have shown that the Analogue Act fails to give adequate notice to a person of common intelligence of what conduct may be illegal.

*See also United States v. Ghae*, 673 F.3d 771, 777 (8th Cir. 2012). *United States v. Browning*, 2014 WL 4996400, at *2 (W.D. Mo. Oct. 7, 2014) ("Defendant failed to present sufficient argument and distinction to conquer the 'uphill battle in arguing the analog provision is void for vagueness.'" *United States v. Long*, Case No. CR 13–30028–RAL, 2014 WL 1661497 (D.S.D. Apr. 25, 2014), *citing Turcotte*, 405 F.3d at 531–32 (7th Cir. 2005) (collecting cases)).

The Analogue Act provides substantial guidance to both law enforcement and individuals about how to comply with the law in the real-world settings of chemical experimentation. *See Palmer*, Case No. 4:14CR00175 AGF/DDN, at *14 (citing approvingly *United States v. Niemoeller*, 2003 WL 1563863, at *4 (S.D. Ind. 2003)("On its face, the statute gives fair notice to persons of average intelligence of the conduct proscribed. Whether that notice is sufficient must be determined in context, as applied to the facts of a specific case, including the details of the particular compounds in question, in their actual, intended, or claimed effects, and the defendant's conduct regarding those compounds.").

In *Washam*, the Eighth Circuit further explained that the Analogue Act does not lend itself to arbitrary enforcement. About these standards, the Eighth Circuit reasoned:

> The statute does not allow for arbitrary enforcement because the statute itself requires a two-step inquiry before law enforcement may extend its application to a new chemical. The first step in the statute is to determine whether a chemical is substantially similar in chemical structure to a listed chemical. 21 U.S.C. § 802(32)(A)(i). Beyond this inquiry is the requirement that the chemical either has the same effect as the listed chemical on the human body, or it is intended to have such an effect. Id. § 802(32)(A)(i)(ii)(iii). … "[T]he statute is narrowly drawn to proscribe only those chemicals which are dangerous and intended to be used in an illegal manner.

*Washam*, 312 F.3d at 932. Thus, the courts have determined that the effects on the human body can be considered when analyzing whether substances meet the substantial similarity requirement. *See United States v. Franklin*, at *7-8; *Bamberg*, 478 F.3d 934, 937-38 (8th Cir.

2007)(rejecting defendant's lack-of-notice argument in attacking Analogue Act as impermissibly vague).

Courts have further explained that the intent requirement tends to defeat assertions that the Analogue Act is unconstitutionally vague. In *United States v. Sullivan*, 714 F.3d at 1107, for instance, the Eighth Circuit held that the government's burden to prove that a defendant knew he was in possession of a controlled substance analogue may be a fruitful opportunity for a defendant to present evidence at trial that he or she lacked such knowledge and to convince the jury of the same. *Id.*; *See also, United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003)("The requirement of preventing arbitrary enforcement is easily satisfied here. The intent requirement alone tends to defeat any vagueness challenge [to the Analogue Act] based on the potential for arbitrary enforcement."). Moreover, the Supreme Court in *McFadden*, *supra*, noted that the scienter element of the Analogue Act alleviates issues as to vagueness. *Id*. at 2307. The government cites to the *McFadden* Court's recognition of the government's burden to prove intent at trial for support that the Analogue Act is not unconstitutionally vague. *See Carlson*, 810 F.3d at 550-551 ("The Supreme Court recently determined in *McFadden v. United States* that the Analogue Act is not unconstitutionally vague because the statute's 'knowingly or intentionally' scienter requirement alleviates vagueness concerns by "narrow[ing] the scope of its prohibition, and limit[ing] prosecutorial discretion. *Carlson's* constitutional challenge thus fails.'")(internal citations omitted).

Still, defendants argue the Supreme Court's decision in *McKinney v. United States*, 117 S.Ct. 1816 (1997), must give way to the more recent rulings in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016). In *Johnson*, the Supreme Court held that the residual-clause definition of the term "violent felony" in the ACCA was

unconstitutionally vague. *See* 18 U.S.C. § 924(e)(2)(B). The Court applied the "categorical approach" to make this determination—that is to say, the Court "assesse[d] whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." 135 S. Ct. at 2557 (citation omitted). The *Johnson* Court's resulting analysis exposed the unconstitutional flaw in the ACCA's statutory scheme because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* In *Welch v. United States*, the Court once again examined the residual clause of ACCA and held that the rule in *Johnson* was substantive and, therefore, retroactive in cases on collateral review. *Id.* at 1268.

In this case, defendants theorize that the *Welch* ruling after *Johnson* evidences the Court's permanent retreat from the "categorical approach" when a statute is scrutinized for unconstitutional vagueness, and that the Analogue Act is likewise impermissibly void for vagueness. Such a sweeping argument is not persuasive. The Analogue Act provides fair notice to ordinary people and does not invite arbitrary enforcement and the Eighth Circuit has held since *McFadden*, *supra*, that the Analogue Act is not unconstitutionally vague. *See Carlson*, 810 F.3d 544 at 551; *United States v. Williams*, 2016 WL 4006826, at *4 (W.D. Mo. June 29, 2016)(recommending a denial of defendants' void for vagueness argument and denying a motion for bill of particulars in an analogue conspiracy case).

The undersigned agrees with Judge Noce in *Palmer* that the allegations in Count I of the Indictment fall squarely and easily within the definitions of 21 U.S.C. § 802(32)(ii) and (iii) such that a subject substance is a controlled substance analogue if it has or which an individual person intends it to have a "stimulant, depressant, or hallucinogenic effect on the central nervous system

that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." *See Palmer*, Case No. 4:14CR00175 AGF/DDN, at *13 (noting that defendants' argument if a "person could reasonably believe that if a substance does not have the effect of a stimulant, depressant, or hallucinogen, then the substance is not analogue" "might defend against the government's evidence at trial with respect to the definition of 'controlled substance analogue' in § 802(32)(iii), but not to that § 802(32)(ii) that does not depend upon the defendant's specific intent.").

For all of the foregoing reasons defendants' Motion To Dismiss Count I and Motion to Strike substances AKB48 and APINACA; XLR-11 and 5-fluoro-UR-144; A796260; and MAM2201should be denied.

## Motion for Bill of Particulars (Doc. 372)

Rule 7(f), Fed. R. Crim. P., allows a court to order the government to file a bill of particulars. The rule requires that a defendant seek a bill before or within 14 days of arraignment or "at a later time" if the court permits. A bill of particulars serves to inform a defendant of the nature of the charges against him with sufficient precision that he is able to reasonably prepare for trial, and to avoid the threat of surprise at trial. A bill of particulars should not act as a discovery tool. *United States v. Wessels*, 12 F.3d 746 (8th Cir. 1993). Courts have broad discretion to grant or deny a motion for bill of particulars. *United States v. Sileven*, 985 F.2d 962, 966 (8th Cir. 1993). Defendants move for a bill of particulars well after the 14-day deadline contemplated by the rule. However, as explained above, this case is unusual in scope and size. The government's disclosure of discovery in the Analogue cases was voluminous and it was

disclosed to all 29 defendants over the course of many months in batches. The undersigned finds that defendants' Motion should be heard at this time for good cause shown.

In particular, defendants request the identities of the scheduled controlled substances of which substances in Count I of the Indictment are an analogue. They also ask for scheduling dates and the range of dates of alleged distribution or possession with the intent to distribute by defendants. The government counters that such disclosures are premature. Like the Court in *Palmer*, *supra*, the undersigned agrees with defendants that this case presents issues of chemical complexity that will likely require expert testimony at trial and such disclosures about chemical identities should be made well in advance of trial. *Palmer*, Case No. 4:14CR 00175AGF/DDN, at p. 16, ("to avoid unfair surprise at trial, defendants ought to know whether any other substances will be evidenced at trial that would qualify as being in the indefinite 'including-but-not-limited-to' allegation. Therefore, the government must disclose to the defense any such substances."). The government was ordered to file a bill in the *Palmer* case and it did so on August 2, 2016. Thereafter, it filed an amended bill in the *Palmer* case to defendant Wolfe and it must now also do so here for defendants Wolfe and Sloan.

To the extent that defendants ask for disclosure of specific dates, this motion should be denied. The Eighth Circuit has noted that the "conspiracy provision of the Controlled Substances Act does not require an indictment to recite any overt acts taken in furtherance of the conspiracy." *United States v. Pippenger*, 552 S. Supp. 2d 990, 993-94 (D. S. D. July 1, 2014); *citing* 21 U.S.C. § 846; *see United States v. Covos*, 872 F.2d 805, 810 (8th Cir. 1989); *United States v. Dempsey*, 806 F.2d 766, 769 (7th Cir.1986); *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir.1982). So long as the government is prepared to prove at trial beyond a reasonable doubt that defendants agreed to possess the substances alleged for distribution

beginning in 2011—and they were controlled substance analogues, defendants' motion should be denied in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion For Leave To File Overlength Joint Motion To Dismiss (Docket No. 371) is **granted**.

**IT IS FURTHER ORDERED** that defendant Doug Sloan's Motion to Adopt Certain Specific Memoranda of Co-defendant Charles Wolfe Filed in Companion case (Docket No. 618), is **granted**.

**IT IS FURTHER ORDERED** that defendants' Motion For Bill Of Particulars With Supporting Authority (Docket No. 372) as to Count I is **granted in part and denied in part**. The government is hereby ordered to disclose to defendants the chemical or other identity of any controlled substance analogue, not already specifically alleged in Count I of the Indictment, about which it intends to offer evidence at trial within 14 days.

**IT IS HEREBY RECOMMENDED** that Defendants' Motions To Dismiss The Indictment (Docket Nos. 370, 373 and 374) **be denied**.

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in the waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

/s/Noelle C. Collins
United States Magistrate Judge

Dated this 23rd day of September, 2016.